Turcotte, P.J.
The complaint alleges unfair and deceptive acts by the defendants, who filed a general denial. After trial, judgment was entered for the defendants.
The trial judge made the following findings:
Sometime in the Fall of 1980, the plaintiff, a duly licensed Real Estate Broker having her office in Northampton, received a verbal, ‘open’, non-exclusive listing of certain real estate located in said Worthington from the owner thereof, one Harry Patten. Patten was known tó the plaintiff as a person engaged in the business of buying real estate in the area for resale and reselling for his own account. The sale price quoted was $49,500.00 and a $3,000.00 deposit was required to accompany the offer.
Plaintiff advertised said property for ten (10) days in the Berkshire Eagle and the Gazette, newspapers of general circulation in the vicinity. As the result thereof, the plaintiff received numerous telephone calls and showed the property to a number of prospective buyers, including certain persons hereinafter referred to as the Millmans.
The Millmans’ first contact with the plaintiff was by telephone on November 13, 1980. After several phone calls back and forth to arrange a mutually acceptable meeting date, the plaintiff showed the Millmans the subject real estate on November 17,1980. At that time, the plaintiff quoted . . . Patten’s price of $49,500.00 and informed them of the requirements of $3,000.00 deposit to accompany the offer. The Millmans decided that they wanted to buy the Patten property but desired to pay something less than Patten’s quoted price. They asked the plaintiff to check with Patten to determine if his quoted price was “firm.” In the presence of the Millmans, the plaintiff tried unsuccessfully to reach Patten by phone. The plaintiff then *196 accepted $40.0.00 from the Millmans as earnest money, thelatter not then having the full $3,000.00 to satisfy the deposit requirement, with the understanding that the additional $2,600.00 balance would be forthcoming shortly.
On November 18th, the plaintiff again attempted unsuccessfully to reach the seller, at both his home and his office.
On November 19th, there were telephone calls between the Millmans and the plaintiff regarding a delay anticipated by the Millmans in providing the $2,600.00 balance of the deposit, and the Millmans intention to go to the propérty with a contractor and/or friends to inspect the house. On the same day, Mrs. Millman called the plaintiff to ask for a copy of the sales agreement ‘to take to the bank.’ The plaintiff reported to Mrs. Millman that she had not yet been successful in reaching Patten.
On November 20th, the plaintiff talked with Patten on the telephone and inquired if the $49,500.00 asking price was firm. She did not disclose the name of the prospective purchasers. Patten told her he did not wish to receive offers and the price was firm. The plaintiff did not make any proposed offer of less than the asking price and accepted Patten’s response to her inquiry as he stated it. Plaintiff then telephoned the Millmans and advised them of Patten’s response to their inquiry. No written offer was ever prepared by the plaintiff and submitted to the Millmans for their signature offering to purchase the subject property at Patten’s asking price or at any other price. However, some time after the 20th, the plaintiff at the Millmans’ request, called Patten and orally made an offer to purchase at $49,500.00 with $400.00 deposit. Said offer was immediately rejected by Patten.
On November 22nd, the plaintiff talked on the telephone with Mr. Millman who reassured her that everything was fine and that they would be getting back to her soon. The conversation did not indicate in any way that the Millmans were not going to continue using plaintiffs services as broker.
After plaintiffs receipt from the Millmans on November 17th of the $400.00 earnest money, she did not show the Patten real estate to any other prospects.
On or about December 9th, the plaintiff learned that the Millmans were going to buy the subject real estate through the defendant, Isgood Realty Agency, Inc. and its agent, defendant, Anthony M. Zucker. The plaintiff immediately called Mrs. Millman who disclosed that Mr. Millman had known defendant, Anthony M. Zucker, independently of the real estate business; that defendant had shown properties in the Pittsfield-Lanesboro area to the Millmans; that at a social gathering the Millmans had initiated discussion with Anthony M.. Zucker concerning the Patten property in Worthington, more specifically, the plaintiffs acceptance of Patten’s reponse to their inquiry regarding the firmness of the asking price and deposit requirement of the reluctance (as the Millmans perceived it) of the plaintiff to make a counter offer; that both defendants knew Patten; that they, the Millmans, wanted to make a counter offer to Patten and had requested defendant, Anthony M. Zucker, to make it on their behalf; that a counter offer had been made by defendant, Anthony M. Zucker and his employer, Isgood Realty Agency, Inc.; and that as a *197 result of said counter offer agreement had been reached. A written offer to purchase at $47,000.00 was ultimately accepted by Patten, said offer being accompanied by a deposit of $1,000.00.
The plaintiff claims to be aggrieved by the judge’s denial of her requests numbered 2,3,4,5,6,9,10,11,12,14,15,16,17,19,20,21,22,30,31,34 and 35.
Each of the requests denied are request for findings of fact rather than rulings of law. M.G.L.c. 231, § 108 provides that “any party — aggrieved by any ruling on a matter of law may have the ruling reported — for determination by the Appellate Division.” Precedent for the principle that the Appellate Division does not review the fact finding of the trial judge are too numerous to cite. The report is therefore dismissed.
There is a further reason to dismiss the report in that the draft report was not timely filed. Docket entries show judgment entered on May 13, 1983. No request for report was ever filed. On June 23,1983 a motion to extend time to file a report was filed. No request to extend time to file a request for report was ever filed. On June 6,1983, a judge, not the trial judge, allowed this motion. The record does not indicate a showing of excusable neglect. Assuming such a showing'the judge was in error in that he ruled the report should be filed by June 28,1983. Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (i) (ii) provides that the 10 day period to file a request for report may be extended upon a showing of excusable neglect; but not exceeding 10 days after the entry of judgment. Loche v. Slate, 387 Mass. 682 at 686 (1982). Both the request for report and the draft report must be filed except where the draft report is filed within 10 days after entry of judgment. On June 20,1983 the draft report was filed, however more than twenty (20) days after entry of judgment.